# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

MICHELLE MARIE KRUGER,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C13-3036-MWB

**REPORT AND
RECOMMENDATION**

———————————

Plaintiff Michelle Marie Kruger seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Kruger contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded.

## I.  BACKGROUND

Kruger was born in 1974, completed high school, has a CNA (certified nursing assistant) certificate and was previously employed as a nurse aide and fast food worker. AR 145, 251, 289, 360.  She protectively filed for SSI on March 22, 2010, and DIB on March 23, 2010, asserting a disability onset date of March 22, 2010, for both applications. AR 137, 284.  In her initial disability report, Kruger alleged that she was disabled due to the effects of diabetes. AR 288.

Kruger's claims were denied initially and on reconsideration. AR 137. She requested a hearing before an Administrative Law Judge (ALJ) and on April 18, 2011, ALJ David Buell held a hearing during which Kruger and a vocational expert (VE) testified. AR 154-87.

On June 6, 2012, the ALJ issued a decision finding Kruger was not disabled since March 22, 2010. AR 137-46. Kruger sought review of this decision by the Appeals Council, which denied review on June 10, 2013. AR 1-4. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On August 1, 2013, Kruger commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II.  *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined

in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *III.  ALJ'S FINDINGS*

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

(2) The claimant has not engaged in substantial gainful activity since March 22, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe combination of impairments:  diabetes mellitus with neuropathy and the residuals of right knee surgery. (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)    The claimant was born on March 4, 1974 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from March 22, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 139-46.


## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of

choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789

(8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.  DISCUSSION

Kruger argues the ALJ's decision is not supported by substantial evidence for the following reasons:

I.  The ALJ failed to fully and fairly develop the medical record regarding Kruger's physical limitations.

II.  The ALJ erred in finding that Kruger's mental impairments of depression and anxiety are not severe.

I will discuss these arguments separately below.

### A.  *Physical Impairments*

#### 1.  *Medical Evidence*

In 2009, Kruger saw Susan Casady, D.O., for right knee pain with swelling and a history of arthroscopic surgery.  AR 395.  An X-ray on October 22, 2009, showed a small moderate right knee joint effusion. AR 398.  On November 15, 2009, Kruger sought treatment at Mercy North Emergency Department for right knee pain. AR 365. About a week later, she returned to the ER for hyperglycemia and diabetes complications. AR 374.  She was admitted to the hospital for three nights and diagnosed with diabetic ketoacidosis, acute renal failure secondary to dehydration, diabetes I, diabetic peripheral neuropathy, microalbuminuria, hyperlipidemia, history of high-grade cervical dysplasia, and anxiety. AR 367.  Kruger had run out of Levemir insulin and test strips and was not able to monitor her blood sugars.  *Id.*

In January 2010, Kruger saw Kathryn Pottratz, ARNP-C, for a possible infection due to intravenous drug usage. AR 392-94.  On February 23, 2010, she returned to the ER due to right foot pain with swelling.  She was started on medicine and given compression hose.  AR 378.  She was then admitted to the hospital from February 23,

2010, to February 25, 2010, for right foot cellulitis, diabetes I, diabetic peripheral neuropathy, hyperlipidemia and anxiety. AR 376.

Kruger returned to Pottratz on March 15, 2010, for dizziness and lightheadedness. AR 391. She was crying, looked unkempt and wanted to sleep all day. *Id.* Pottratz diagnosed diabetes I out of control, panic attacks and hyponatremia. *Id.*

Kruger saw Pottratz again on June 29, 2010, with tingling feet, anxiety with panic attacks, chest pain, dyspnea, bilateral neuropathy of her feet and diabetes I under poor control. AR 443. She had a nuclear medicine myocardial perfusion spectrum test on July 1, 2010, that returned normal findings. AR 439.

On July 6, 2010, Kruger was a no show for her scheduled appointment. AR 442. She did return to Pottratz on July 9, 2010, for chest pain and a panic attack. AR 448. Pottratz noted that Kruger was acting "kind of goofy," with glassy eyes. *Id.* While Kruger denied taking any illegal drugs, she was acting "really inappropriate." *Id.*

On October 5, 2010, Kruger returned to Pottratz with a goal of getting "cleaned up" before she went to jail. AR 446. At that time, she had left foot cellulitis, diabetes I in poor control, anxiety and noncompliant behavior. AR 446. On October 13, 2010, she returned to the ER for cellulitis in her left foot. AR 456. An X-ray was negative. AR 459. On November 28, 2010, Kruger sought treatment at the ER for left foot pain and swelling. AR 465. An X-ray showed soft tissue swelling and ulceration along the lateral plantar aspect of the foot at the fifth MTP joint with no evidence of osteomyelitis. AR 468.

Kruger was admitted to the hospital from November 29, 2010, to November 30, 2010. AR 460. During this hospitalization she had cellulitis of the left lower extremity with chronic open wound, coronary artery disease with decreased ejection fraction of 35 percent, uncontrolled diabetes, hypertension, protein wasting nephropathy likely due to diabetes resulting in hypertension, tobacco addiction, polysubstance abuse and diabetic neuropathy. AR 460. She was transferred to the University of Iowa Hospitals and Clinics for treatment for health insurance reasons. *Id.* She was admitted on November 30, 2010,

and discharged on December 1, 2010. AR 470. While at the University of Iowa, she was treated for cellulitis of her left foot, diabetic peripheral neuropathy, diabetes I, coronary artery disease, hypertension with debridement of her left foot. *Id.* A cast was placed on her foot. AR 471.

On December 23, 2010, Kruger went to the ER to have the cast removed. AR 479. On the same day, LeeAnn Hoodjer, ARNP, increased Levemir due to an A1C score of 13.[1] AR 488. Kruger returned for treatment on December 28, 2010, with a swollen foot and indicated that she had not elevated her foot. AR 482. Her wound was clean and doing well. *Id.*

On January 4, 2011, Kruger saw Hoodjer for follow up concerning her foot. AR 520. On January 17, 2011, Kruger was seen at the ER for diabetic foot ulcer with cellulitis, diabetes I uncontrolled, hypertension, substance abuse and depression. AR 490. She was again transferred to the University of Iowa Hospitals and Clinics for insurance reasons and was admitted for the administration of medicine. AR 492.

On January 25, 2011, Kruger returned to the ER due to swelling of her hand and face, diabetes I uncontrolled, diabetic foot ulcer and depression. AR 497-98. She was found to have had an allergic reaction to medication. AR 497. She returned to the ER on March 28, 2011, for her left foot pain. AR 531. She returned the next day complaining of headache, facial swelling, toothache and backache. AR 528. She had been noncompliant with her medications and stated she was not able to afford Seroquel due to financial reasons. *Id.*

Kruger returned to Hoodjer on April 29, 2011, for uncontrolled diabetes, diabetic foot ulcer, hyperlipidemia and anxiety. AR 516. She was started on Citalopram. *Id.* She returned to the ER on May 24, 2011, for an ulcer on her left heel and mid foot area.

---

[1] A1C is a test that provides information about a person's average levels of blood glucose and is used for diabetes management. *See* National Diabetes Information Clearinghouse, http://diabetes.niddk.nih.gov/dm/pubs/A1CTest/ (last visited April 21, 2014). The normal level is 5.7 or less. A level of 6.5 or higher indicates diabetes. *Id.*

AR 524.  On July 13, 2011, she visited the ER for eye pain. AR 559.  She returned again on August 4, 2011, for hyperglycemia with noncompliance of her diabetic treatment.  AR 549.

On September 27, 2011, Kruger saw Mark Dankle, D.O., for neuropathy, nephropathy, hyperglycemia with diabetes I and reported that she was not taking insulin.  AR 568.  On October 21, 2011, Kruger was admitted to the hospital because of hyperglycemia due to noncompliance of her diabetes treatment. AR 540.  She was discharged on October 22, 2011. AR 536.

On November 14, 2011, Ms. Kruger called Dr. Dankle and reported a blood sugar level of 531.  AR 564.  She was advised to seek treatment at the ER.  *Id.*  She returned to Dr. Dankle on November 15, 2011, for treatment of diabetes and diarrhea.  AR 563.  She then missed appointments on November 17, 2011, November 21, 2011, and November 22, 2011.  *Id.*

From January through March of 2012, Kruger made eleven visits to a chiropractor, Nick McColley, D.C., for neck and back pain. AR 583-85.  On March 26, 2012, she was referred to a retinal specialist for her vision. AR 588. The following day, she saw Mark Johnson, M.D., for uncontrolled diabetes, smoking cessation, bipolar depression, dyslipidemia, hypertension and multiple sequelae to diabetes including her severe diabetic retinopathy. AR 590.  On April, 4, 2012, Kruger saw Bradley Isaak, M.D., for a vision check and was found to be doing well.  AR 586.

### 2.    *Opinion Evidence*

On May 3, 2010, a state agency consultant, Donald Shumate, D.O., prepared a physical RFC assessment based on his review of records.  AR 405-12.  He determined that Kruger could lift 20 pounds occasionally, 10 pounds frequently, stand for six hours and sit for six hours.  AR 406.  He further found that she could climb, kneel, crouch or crawl on an occasional basis.  AR 407.

On June 29, 2010, Kruger's treating nurse practitioner, Kathryn Pottratz, prepared a written "Report on Incapacity" for the Iowa Department of Human Services. AR 437-38. She listed Kruger's diagnoses as including Type I Diabetes, bilateral diabetic retinopathy, bilateral diabetic neuropathy, anxiety and panic attacks. AR 437. She further noted that Kruger's conditions were both "progressive" and "permanent" and that Kruger would require "lifetime" treatment. *Id.* In a section of the form labelled "employment," Pottratz wrote that Kruger's ability to perform work is "unknown until cardio-pulmonary work-up completed." AR 438. On the same page, she noted that Kruger should perform no lifting. *Id.*

On March 1, 2011, another state agency consultant, Gary Cromer, M.D., prepared a physical RFC assessment based on his review of records. AR 499-506. He found that Kruger could lift 20 pounds occasionally, 10 pounds frequently, stand for six hours and sit for six hours. AR 500. Dr. Cromer found that Kruger should avoid concentrated exposure to extreme cold, heat and avoid hazards. AR 503.

### 3. The ALJ's Findings

As noted above, the ALJ found that Kruger has the following severe combination of impairments: diabetes mellitus with neuropathy and the residuals of right knee surgery. AR 140. In making that finding, the ALJ concluded that these impairments "cause significant limitations in [Kruger's] ability to perform basic work activities." *Id.* He then found that Kruger retains the physical RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).[2] AR 141. He included no nonexertional limits on Kruger's ability to perform sedentary work. *Id.*

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a).

In making this RFC determination, the ALJ reviewed the medical evidence, noting that Kruger has "a history of poorly controlled diabetes with peripheral neuropathy." AR 142. He found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible." AR 144. The ALJ provided several reasons for discrediting Kruger's subjective allegations of disabling impairments, including inconsistent statements about her limitations, noncompliance with treatment and her activities of daily living. *Id.*

Next, the ALJ addressed the opinion evidence of record. He noted that Pottratz, as a nurse practitioner, is not an acceptable medical source pursuant to the Commissioner's regulations. AR 145. He further found that Pottratz's opinion appeared to be based primarily on Kruger's subjective complaints and that it included statements about Kruger's mental health that appeared to be beyond Pottratz's expertise. *Id.* For these reasons, he determined that Pottratz's opinion was entitled to little weight. AR 144-45.

The ALJ then referenced the opinions provided by the state agency consultants, noting that they were to be "weighed as statements from non-examining expert sources." AR 145. He found that the consultants "adequately considered the evidence of record" and that their opinions were entitled to "great weight." *Id.* In light of these findings, the ALJ essentially adopted the physical RFC assessments provided by the state agency consultants, as both concluded that Kruger's limitations are not so severe as to preclude sedentary work. AR 140, 405-12, 499-506.

After determining Kruger's RFC, the ALJ found – based on the VE's testimony – that she is unable to perform any past relevant work. AR 145. He then made a finding, at Step Five, that there are other jobs that exist in substantial numbers in the national economy that Kruger can perform. AR 145-46. As such, and based on Medical-Vocational Rule 201.28, he concluded that she is not disabled within the meaning of the Act. AR 146.

### 4.    Analysis

Kruger alleges that the ALJ failed to fully and fairly develop the record concerning her physical limitations because the record contains no medical opinions from any treating or examining physician concerning those limitations.  She points out that the record reflects numerous instances of hospitalization and ER visits for diabetes-related symptoms.  And, indeed, the ALJ found that Kruger's physical impairments do "cause significant limitations in [her] ability to perform basic work activities." AR 140.    Yet the ALJ, in assessing Kruger's RFC and concluding that she has the ability to perform other work, did not have the benefit of a medical opinion from any doctor who treated or, at least, examined Kruger.  According to Kruger, this omission requires remand.

The Commissioner disagrees, noting that the ALJ thoroughly examined the medical evidence of record and that the ALJ's assessment of Kruger's RFC is supported by the opinions of the non-examining consultants.  The Commissioner also contends that the ALJ provided good reasons for his decision to discredit Kruger's subjective allegations as to the intensity, persistence, and limiting effects of her symptoms.  According to the Commissioner, there was no need for the ALJ to take further steps to develop the record because it contained sufficient information to determine Kruger's RFC and find that she is able to perform other work.

The ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel.  *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)).  This duty includes "arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "Because the social security disability hearing is non-adversarial … the ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo,* 377 F.3d at 806 (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir.2004)).

In *Nevland*, as in this case, the Commissioner made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform various jobs identified by a VE. *Id.* at 857. And, like here, non-treating and non-examining physicians reviewed the claimant's records and gave opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id.* at 858. The Eighth Circuit Court of Appeals began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857. The court then noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id.* at 858. The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975): "An administrative law judge may not draw upon his own

inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir. 1974)."

*Id.* [emphasis in original].

This case presents the same situation. The ALJ found that Kruger has severe physical impairments and could not perform past relevant work. AR 140, 145. This required a Step Five analysis. At Step Five, the burden of production (but not persuasion) shifts to the Commissioner. *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) ("The Commissioner recently promulgated a new rule designed to clarify that although a burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant."). The Commissioner must produce evidence "first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Eichelberger*, 390 F.3d at 591; *see also Nevland*, 204 F.3d at 857.

*Nevland* holds that the Commissioner "ordinarily" cannot meet this burden without an opinion from at least one doctor who actually examined the claimant. *Id.* at 858. Of course, "ordinarily" does not mean "never." Judge Bennett recently noted that *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin*, No. C 12-4092 MWB, 2013 WL 6511866, at * 10 (N.D. Iowa Dec. 12, 2013). Thus, if other medical evidence in the record clearly establishes a claimant's RFC to do other work, and to function in the workplace, the absence of an opinion from examining physicians may not require remand. *Id.* at *11 (citing *Nevland*, 204 F.3d at 858).[3]

---

[3] In *Hattig*, Judge Bennett also rejected the Commissioner's argument that *Nevland* is no longer good law. *Id.* at *9. Kruger expressly references and relies upon *Nevland* in her brief. *See* Doc. No. 12 at 10. Yet the Commissioner's brief, while citing *Hattig,* does not cite (let alone analyze) *Nevland*. Doc. No. 13. Given *Nevland*'s obvious relevance, that omission is surprising.

Is this such a case?  No.  As in *Hattig*, the record contains insufficient evidence of "the nature and severity of [Kruger's] impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions."  *Id.* [citation omitted].  The ALJ found that Kruger's physical impairments "cause significant limitations in [her] ability to perform basic work activities," AR 140, but relied solely on the opinions of doctors who did not examine her to reach conclusions concerning the extent of those limitations.  The medical evidence of record does not fill the gap.  If anything, that evidence shows that Kruger has had recurring, serious symptoms that required repeated treatment, including hospitalization.  The evidence does not show whether the symptoms will continue to recur and, if so, to what extent they will limit Kruger's ability to perform competitive work.  For example, will Kruger be absent from work on a regular basis because of serious, recurring symptoms?

Under these circumstances, the ALJ should have developed the record further by, at minimum, arranging for a consultative physical examination.  I must recommend remand to cure this error.

## B.    *Mental Impairments*

### 1.    *Medical Evidence*

In sharp contrast with Kruger's physical impairments, there is scant medical evidence concerning her mental impairments of depression and anxiety.  Anxiety was listed as a diagnosis on two occasions when Kruger was hospitalized for other reasons.  AR 367, 376.  Pottratz, the nurse practitioner, prescribed psychotropic medication for depression.  AR 397, 414.  However, Kruger never sought treatment from any mental health professional.  AR 140, 414.

## 2.    *Opinion Evidence*

Kruger underwent a psychiatric evaluation conducted by Carroll D. Roland, Ph.D., a licensed psychologist, in May 2010.  AR 413-17.  Dr. Roland diagnosed depressive disorder, not otherwise specified, and panic disorder without agoraphobia. AR 417.  He found that Kruger has moderate depression and noted that she reported having panic attacks that rarely last more than 5 to 10 minutes.  AR 416.  He further found that her "memory and intellect are sufficient for employment."  AR 417.  He stated that Kruger's "primary deterrent to competitive employment appears to be her diabetes and associated multisystem illnesses."  *Id.*  He assigned a GAF score of 65-70, indicating only mild impairment.[4]  Dr. Roland did not indicate any functional restrictions associated with Kruger's mental impairments.  *Id.*

On June 14, 2010, Philip Laughlin, Ph.D., a nonexamining state agency consultant, reviewed records and prepared a written psychiatric review technique.  AR 418-31.  He found that Kruger has only mild limitations as a result of her mental impairments that that she had never had an episode of decompensation of an extended duration.  AR 428.  He noted the lack of evidence of mental health treatment, other than prescribed medication, and concluded that Kruger's mental impairments are not severe. AR. 430.

## 3.    *The ALJ's Findings*

The ALJ found, at Step Two, that Kruger's mental impairments are not severe within the meaning of the Act.  AR 140.  That is, he concluded that they "do not cause

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations.  *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM–IV).  A GAF score of 61 to 70 indicates an individual who has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but [is] generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.*

more than minimal limitation in [Kruger's] ability to perform basis mental work activities." *Id.* The ALJ took note of the fact that Kruger never sought treatment from a mental health professional and, further, that she reported that she was fired from her most-recent job due to absences related to diabetes, not because of any mental impairments. *Id.* He referenced the medical opinion evidence and, further, pointed out that Kruger had not reported any significant functional limitations resulting from mental impairments. *Id.*

### 4.    *Analysis*

Kruger contends the ALJ erred in finding that her mental impairments are not severe. She notes that she has been diagnosed with depression and anxiety and that Pottratz, her nurse practitioner, stated that she has limitations based on her mental health issues. Kruger also relies on Dr. Roland's findings that she (a) has moderate depression and (b) experiences panic attacks. Kruger contends that she met her burden of proving that her mental impairments are severe and requests remand to further develop her claim.

The Commissioner disagrees, relying primarily on the reasons identified by the ALJ. The Commissioner also notes that Kruger did not allege mental impairments in her initial disability reports. AR 288, 300. She made no reference to mental impairments until March 2011, when she submitted a disability report that mentioned anxiety. AR 338. Finally, the Commissioner points out that Kruger was examined by Dr. Roland, an acceptable medical source, and that his opinion supports the ALJ's finding.

An impairment is non-severe if it has no more than a minimal impact on an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a); *accord* SSR 96-3p, 1996 WL 374181 (July 2, 1996). "Basic work activities" include mental capacities for understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6). Slight abnormalities

that do not significantly limit a basic work activity are considered "not severe." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).

"Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard." *Kirby,* 500 F.3d at 708 (citation omitted) (also noting that "we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing"). The mere presence of a mental disorder does not automatically indicate a severe disability. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Here, I have no difficulty finding that substantial evidence supports the ALJ's determination. The medical evidence does not support Kruger's claim that her mental impairments are severe. And, unlike the situation involving Kruger's physical impairments, the record contains an opinion of an acceptable medical source who actually examined Kruger. That opinion supports the ALJ's finding. Meanwhile, the ALJ properly discounted Nurse Pottratz's opinion on grounds that she is not an acceptable medical source and that her generalized statement concerning panic attacks appears to have been based solely on Kruger's own subjective complaint. Because substantial evidence supports the ALJ's finding, the ALJ will not be required to revisit Kruger's mental impairments on remand.

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Kruger was not disabled be **reversed and remanded** for further proceedings and that judgment be entered against the Commissioner and in favor of Kruger. On remand, the ALJ must fully and fairly develop the record concerning Kruger's physical impairments. This includes obtaining an opinion from a treating or examining acceptable medical source as to Kruger's physical RFC. The ALJ must then re-analyze Kruger's claim based on the fully-developed record.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 21st day of April, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE